■ In the Matter of ASA INSTITUTE OF BUSINESS AND COMPUTER TECHNOLOGY, INC., Doing Business as ASA INSTITUTE OF BUSINESS AND COMPUTER TECHNOLOGY, Appellant, v H. CARL McCALL, as Comptroller of the State of New York, et al., Respondents. [722 NYS2d 601] —Spain, J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered December 27, 1999 in Albany County, which, *inter alia*, dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review the final audit report of respondent Department of Audit and Control.

Petitioner is a private two-year business school many of whose students receive Tuition Assistance Program (hereinafter TAP) awards (*see*, Education Law § 665 [3]). The Legislature has established specific criteria to identify students and educational programs eligible for TAP grants, as well as a mechanism to ensure the integrity of the program (*see*, Education Law arts 13, 14). Respondent Higher Education Services Corporation (hereinafter HESC) was created to administer TAP (*see*, Education Law art 14). An institution participating in TAP must certify to HESC that its TAP recipients meet eligibility requirements, including full-time attendance and the maintenance of good academic standing in an approved program (*see*, Education Law § 665).

In accordance with this statutory scheme, respondent Comptroller, through respondent Department of Audit and Control (hereinafter collectively referred to as the Comptroller), performed an audit of petitioner for the 1991-1994 school years to ensure that those students who received TAP awards were entitled to such awards (*see*, Education Law § 665 [3] [b]). After issuing two previous audit reports—both challenged by petitioner and subsequently withdrawn by the Comptroller—

the Comptroller issued the audit report at issue in this proceeding, finding that petitioner was not in compliance with the rules and regulations relating to TAP eligibility and had not otherwise substantiated its certification of some of its students for eligibility. Thus, the Comptroller recommended recoupment from petitioner of $696,352 in TAP funds. The recommendation was accepted by HESC and respondent Commissioner of Education. Thereafter, petitioner commenced this proceeding challenging the audit. Supreme Court dismissed the petition, concluding that the audit was not arbitrary or capricious, but specifically rejected any argument that petitioner engaged in fraudulent alteration of attendance records. Petitioner appeals and we now affirm.

An institution participating in TAP must demonstrate, among other things, that certain core courses were taught for a minimum number of hours by qualified instructors and that students met minimum attendance requirements (see, Education Law § 601 [4]; § 5002 [1] [b]; 8 NYCRR 126.4 [e]; 145-2.3 [b] [2] [iii]). To ascertain compliance with these standards, participating schools are required to maintain attendance registers which show the name, dates, room number and time of each course taught, as well as the names of the students taking the course and their daily attendance (see, 8 NYCRR 126.4 [e]). The attendance register must also contain the name, signature and verification of accuracy of the instructor (see, id.). Here, after the Comptroller's initial audit revealed that petitioner's attendance registers did not meet these standards, petitioner resubmitted its attendance registers with various penciled-in corrections.

Petitioner first contends that Supreme Court's finding that petitioner had not changed its records in an attempt to conceal facts is inconsistent with the court's ultimate conclusion that the audit was rational. We disagree. Respondents did not allege that petitioner engaged in fraudulent behavior. The disallowance was based instead on petitioner's failure to provide sufficient evidence that the minimum TAP requirements had been met. Specifically, after reviewing all of the material submitted by petitioner—including the corrected attendance records—the Comptroller continued to find inconsistencies which cast substantial doubt on the reliability of many of the submitted documents. Supreme Court determined that respondents' conclusion—that the documentation was inaccurate—was supported and rational, a finding that is in no way mutually exclusive of the determination that petitioner never engaged in any activity intended to deceive its auditors.

Turning to petitioner's attack on the rationality of the Comptroller's audit, we are mindful that respondents' disallowance of the TAP awards must be upheld unless arbitrary and capricious (*see, Matter of Crown Bus. Inst. v New York State Dept. of Audit & Control*, 168 AD2d 843, 844; *Matter of Royal Bus. School v New York State Dept. of Educ.*, 141 AD2d 170, 172-174; *see also, Matter of Touro Coll. v Nolan*, 207 AD2d 42, 44). Initially, we have already rejected those arguments advanced by petitioner related to the accusation of fraud purportedly made by the Comptroller. As discussed, the record amply supports the conclusion that respondents based the disallowance on the inaccuracy of petitioner's records rather than any imputed intent to deceive. Thus, petitioner's criticism of the Comptroller for failing to raise the accusation of improper record alteration until the third audit is unfounded. We also reject petitioner's alternative contention that the Comptroller adopted conflicting positions on the issue of record alteration when it rejected some of the corrected attendance records without alleging any fraudulent behavior. As previously discussed, the absence of fraud does not necessarily preclude a finding that documentation is unreliable or inaccurate.

Likewise, we conclude that petitioner's attacks on the Comptroller's methodology in conducting the audit are unpersuasive and tend to obscure the key premise underlying respondents' determination (and never directly disputed by petitioner), namely, that petitioner failed to maintain records supporting the TAP awards which complied with applicable regulations. For example, petitioner contends that the Comptroller impermissibly assessed disallowances based on conflicts between the attendance records and other, contemporaneously created documents. Undisputably, it is petitioner's burden to maintain accurate attendance records (*see*, 8 NYCRR 126.4) and, as essentially admitted by petitioner and evidenced by the corrections made to the original attendance records, petitioner did not meet this burden. Indeed, the attendance registers, corrected by petitioner's registrar years after the courses were offered, clearly failed to comply with the standards set forth in the regulations requiring a verified, contemporaneous record. Thus, in our view the Comptroller acted reasonably both in requiring additional documentation to corroborate the corrected attendance records and ultimately in discounting information where, after considering all of the documents submitted by petitioner, inconsistencies were found between the supporting documents and the annotated attendance registers (*see, Matter of Crown Bus. Inst. v New York State Dept. of Audit & Control*, 168 AD2d 843, 844-845, *supra; Matter of Elmira Bus. Inst. v*

*New York State Dept. of Educ.,* 116 AD2d 133, 138, *affd* 70 NY2d 758).

Additionally, petitioner alleges that respondents improperly included new allegations in their answer in violation of the rule of law that "judicial review of an agency decision is limited to the reasons given by the agency in its decision" (*Matter of Central NY Coach Lines v Larocca,* 120 AD2d 149, 152). In its final audit, the Comptroller based its recommendation on petitioner's failure to demonstrate that those students who received TAP awards were actually entitled to the awards. Specifically, the Comptroller found that much of the information submitted by petitioner was inconsistent and, as a result, petitioner did not meet its burden of showing that its students met minimum program hour and core curriculum requirements. Those aspects of respondents' answer to which petitioner now objects are not alternate grounds for the determination but, rather, a more detailed explanation of the deficiencies in petitioner's original records and subsequently submitted proof. As the rationale underlying respondents' disallowance has not changed, we find no merit to petitioner's contention that respondents are improperly offering new grounds for affirmance in the context of this proceeding.

In the audit, the Comptroller discounted the hours taught by unlicenced teachers (*see,* Education Law § 5002 [6] [a]; 8 NYCRR 126.6 [f] [1], [2]; *Matter of Royal Bus. School v New York State Dept. of Educ.,* 141 AD2d 170, 171-172, *supra*). Petitioner argues that in doing so, the Comptroller improperly failed to address whether those teachers, while not licensed, were licensable. While hours taught by a teacher who is not licensed but is qualified to receive a license by virtue of meeting education and experience requirements can count for TAP eligibility (*see, Matter of Metropolitan Career Inst. v Regan,* 215 AD2d 982, 985), petitioner has utterly failed to demonstrate, or even argue, that any of the teachers at issue were, in fact, licensable. Instead, the crux of its argument is that the Comptroller did not properly inform them of the applicable licensability standards. As the qualifications for teachers are set forth by regulation (*see,* 8 NYCRR 126.6 [f] [2]), we find that petitioner's professed ignorance of those standards cannot excuse its noncompliance (*see, Matter of Carter v State of New York, Exec. Dept., Div. of Parole,* 267 AD2d 590, 591, *affd* 95 NY2d 267). In any event, the record supports respondents' assertion that they did consider the licensability of teachers inasmuch as the final audit report was modified from previous reports to recognize those teachers for whom petitioner was

able to produce evidence of licensability, and correspondence between the Comptroller and respondent Department of Education demonstrates that the Comptroller did ascertain the licensability of the teachers at issue.

We now turn to petitioner's contention that it was error to require it to refund the TAP funds because no determination was made by either HESC or the Commissioner that such repayment is called for as required by Education Law § 665 (4) (b). As both HESC and the Commissioner adopted the audit conclusions of the Comptroller, and both entities unquestionably have the authority to order a refund such as that at issue here (*see*, Education Law § 665 [4] [b]), we conclude that the refund was properly ordered.

Finally, we reject petitioner's challenge to the rationality of the audit on the ground that the Comptroller took a more lenient approach when auditing another school. The record does not support the conclusion that the two schools were so similarly situated that the Comptroller's determination—that one had violated the regulations and the other had not—is irrational.

We have considered petitioner's remaining arguments and find them lacking in merit.

Mercure, J. P., Peters, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.